Kathleen J. Abke, #12422
STRONG & HANNI
102 South 200 East, #800
Salt Lake City, UT  84111
Telephone: 801-532-7080
Facsimile: 801-596-1508
kabke@strongandhanni.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS M. and E.M.,<br><br>Plaintiffs,<br><br>vs.<br><br>SAS INSTITUTE, the SAS INSTITUTE INC. MEDICAL PLAN and BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA; and BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:22-cv-00297-JCB<br><br>Judge Jared C. Bennet |

COME NOW Thomas M. and E.M., (collectively, "Plaintiffs"), by and through their undersigned counsel, complain and allege against the above-captioned Defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Thomas M. ("Thomas") and E.M. are natural persons residing in Raleigh, North Carolina. Thomas is E.M.'s father.

2. Blue Cross and Blue Shield of North Carolina ("BCBSNC") is an independent licensee of the nationwide Blue Cross and Blue Shield Association.  BCBSNC was the third-party

claims administrator, as well as the fiduciary under ERISA, for the SAS Institute, Inc. Medical Plan (the "Plan") during the treatment at issue in this case.

3. The Plan is a self-funded employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. Thomas was a participant in the Plan and E.M. was a beneficiary of the Plan at all relevant times. Thomas and E.M. continue to be participants and beneficiaries of the Plan.

4. E.M. received medical care and treatment at Open Sky Wilderness Therapy ("Open Sky"), a licensed residential treatment facility in Colorado and Utah, from May 17, 2020 through August 12, 2020.

5. Open Sky providers sub-acute inpatient treatment to adolescents with mental health, behavioral and/or substance abuse problems.

6. BCBSNC denied claims for payment of E.M.'s medical expenses in connection with his treatment at Open Sky.

7. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

8. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's nationwide service of process and venue provisions and because BCBSNC routinely does business in Utah and across the United States through its network of affiliates. In addition, the care at issue was provided at a Utah-licensed residential treatment facility, and it is Plaintiffs' wish that the matter be litigated in Utah based on the increased possibility that the anonymity of E.M. is preserved, the Plaintiffs' convenience and having access to counsel proficient in this area of law.

9. Plaintiffs seek remedies under the terms of ERISA and under the Plan for benefits due under the terms of the Plan, and 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3) for Defendants' violations of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), an award of prejudgment interest, and attorney's fees pursuant to 29 U.S.C. § 1132(g).

## FACTUAL BACKGROUND

10. E.M. sought treatment at Open Sky for depression, generalized anxiety disorder and alcohol use disorder, as well as other behavioral and family relational issues.

11. Open Sky is a residential treatment facility and outdoor behavioral health program and is classified as an intermediate level of care because they offer services which are less intensive than acute hospitalization but not more intensive than outpatient treatment.

12. The Plan provides benefits for the treatment of "MENTAL ILLNESS and substance abuse by a HOSPITAL, RESIDENTIAL TREATMENT FACILILTY, DOCTOR or OTHER PROVIDER. . . ." The Plan defines "other provider" as "An institution or entity other than a HOSPITAL, which is accredited and licensed or certified in the state where located to provide COVERED SERVICES, and which is acceptable to [BCBSNC]. All services performed must be within the scope of license or certification to be eligible for reimbursement."

13. During his treatment at Open Sky, E.M. was under the care of a board certified family medicine physician and board certified psychiatrist, as well as several licensed clinical social workers and Ph.D. level therapists who developed and oversaw E.M.'s individualized treatment plan.

14. Claims were submitted to the Plan by Plaintiffs for E.M.'s treatment at Open Sky.

15. On May 20, 2020, BCBSNC served notice of its initial adverse benefit determination, and denied payment of the claim because the services were "not a covered benefit" because they were "[n]ot performed by or upon the direction of a DOCTOR or OTHER PROVIDER."

16. On September 15, 2020, Thomas timely submitted a Level One Member Appeal.

17. In his appeal, Thomas pointed out that the Plan provided coverage for E.M.'s treatment of "mental illness and substance abuse by a…residential treatment facility, doctor or other provider," including "inpatient and residential treatment facility services."

18. He further explained that Open Sky is a licensed residential treatment facility in the State of Colorado and, in accordance with Colorado licensure requirements, had a licensed, primary physician to establish and maintain the health and medical plan and procedures and that all clinical staff of Open Sky were appropriately licensed physicians, psychologists, clinical social workers, marriage and family therapists or professional counselors. Thomas provided a copy of Open Sky's Colorado residential treatment facility license and certificate of accreditation, license verification of the providers who cared for E.M. at Open Sky, and Colorado Department of Human Services General Rules for Child Care Facilities guidelines as evidence of his position, among other documents and evidence.

19. Thomas explained that by virtue of its licensure as a residential treatment facility in Colorado, Open Sky's services were entirely performed by and/or under the direction of a physician or other provider and, therefore, E.M.'s treatment at Open Sky was a covered benefit under the Plan.

20. Thomas also reminded BCBSMT of his rights under both ERISA and the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). Specifically, he advised BCBSNC

that plans such as the Plan that offer behavioral health benefits are required to offer those benefits at parity with comparable medical or surgical benefits and that MHPAEA requires coverage for intermediate facilities such as Elevations.

21. According to the May 20, 2020 denial letter, BCBSNC was required to issue a letter of decision regarding his Level One Appeal within 30 calendar days of his appeal. BCBSNC failed to meet this requirement and instead issued its denial of Thomas' Level One Appeal on December 4, 2020 – 80 days later.

22. The December 4, 2020 letter upheld the initial benefits denial, stating that Open Sky was non-covered by the Plan because the Plan "does not cover institution [*sic*] providing education in special environments." BCBSNC went on to state that pre-admission certification is required for inpatient services, and there was no pre-admission certification on file for E.M.'s inpatient mental health services.

23. On March 18, 2021, Thomas timely submitted a Level Two Member Appeal.

24. Thomas again pointed out that Open Sky was duly licensed as a residential treatment facility to provide therapeutic services to adolescents in an intermediate, outdoor setting and that Open Sky met the definition of a "Nonhospital Facility" and "Other Provider" under the terms of the Plan.

25. Thomas further argued that BCBSNC was applying treatment limitations prohibited by the MHPAEA.

26. According to the Plan, outdoor behavior health programs are not excluded, and Open Sky qualifies as a mental illness and substance abuse provider under the Plan.

27. On May 4, 2021, BCBSNC denied the Level Two Member Appeal. The denial reason given was the same as the initial May 20, 2020 denial, namely that the services were not

5

Case 5:22-cv-00268-M-RN   Document 2   Filed 05/02/22   Page 5 of 11

covered because the Plan does not cover services "not performed by or upon the direction of a DOCTOR or OTHER PROVIDER."

28. E.M. was treated at a licensed, regulated, and accredited facility, which offers patients therapeutic treatment using well known therapeutic models and would be covered in any alternate intermediate level of care setting.

## FIRST CAUSE OF ACTION

### (Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B))

29. Defendants incorporate by reference paragraphs 1-28, above.

30. ERISA imposes higher-than marketplace standards on the insurers, plan administrators and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary like BCBSNC, acting as an agent of the Plan, that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. § 1104(a)(1).

31. Defendants breached their fiduciary duties to E.M. when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in E.M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of E.M.'s claims.

32. Defendants failed to provide coverage for E.M.'s treatment in violation of the express terms of the Plan.

33. ERISA emphasizes accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. § 1133(2).

34. BCBSNC's denial letters fail to evidence that it conducted a meaningful analysis of Plaintiffs' appeals or whether Defendants provided Plaintiffs with the "full and fair review" to

which they are entitled. BCBSNC failed to substantively respond to the issues presented in Thomas' appeals and did not in any way address the arguments and concerns raised during the prelitigation appeals process.

35. BCBSNC acted in an arbitrary and capricious manner by failing to provide a consistent justification for why it had denied Plaintiff's claims for treatment.

36. BCBSNC and the agents of the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in Thomas' and E.M.'s interests and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Plaintiffs' claims.

## SECOND CAUSE OF ACTION

**(Claim for Violation of the MHPAEA under 29 U.S.C. § 1132(a)(3))**

37. Defendants incorporate by reference paragraphs 1-36, above.

38. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and MPAEA is part of Anthem's fiduciary duties.

39. MHPAEA requires ERISA plans to provide coverage for mental health treatment and substance use disorders that is no less generous or favorable than that provided for treatment of medical/surgical disorders and conditions.

40. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by ERISA plans and from imposing separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(3)(A)(ii).

41. MHPAEA requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant . . . treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the MHPAEA, 75 Fed. Reg. at 5413.

42. Examples of improper nonquantitative treatment limitations ("NQTLs") under MHPAEA include, but are not limited to: medical management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location; facility type, provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A) and (H).

43. BCBSNC denied Plaintiffs' claims for intermediate behavioral health for services that were clearly covered by the Plan, and Open Sky met all of the Plan's requirements to be considered an eligible facility. By ignoring the terms and conditions of the Plan, BCBSNC imposed improper as-applied facility type NQTLs on Plaintiffs' claims from Open Sky.

44. The Plan offers comparable benefits for medical/surgical treatment that the Plan excluded for E.M.'s treatment, including sub-acute inpatient treatment settings including skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. BCBSNC only requires that these analogous medical/surgical treatment facilities operate within the scope of their licenses. As Thomas repeatedly showed, Open Sky was operating within the scope of its state licensure at all times relevant to E.M.'s care, yet BCBSNC applied the identical criteria more stringently or restrictively than the Plan applies to intermediate level medical or surgical benefits.

45. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

46. When the Plan receives claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated E.M.'s mental health claims using covered services criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

47. In this manner, the Defendants violate 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan and the coverage criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, or other factors used to limit coverage for medical/surgical treatment the same classification.

48. The violations of the MHPAEA by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

   a. A declaration that the actions of the Defendants violate the MHPAEA;
   b. An injunction ordering the Defendants to cease violating the MHPAEA and requiring compliance with the statute;

c. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

d. An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of the MHPAEA;

e. An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and other Blue Cross Blue Shield of North Carolina insured and administered plans as a result of the Defendants' violations of the MHPAEA;

f. An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

g. An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of the MHPAEA; and

h. An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of the MHPAEA.

49. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.S.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

**RELIEF**

50. WHEREFORE, the Plaintiffs seek relief as follows:

51. Judgment in the total amount that is owed for E.M.'s treatment at Open Sky under the terms of the Plan, plus pre- and post-judgment interest to the date of payment.

52. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

53. Attorney fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

54. For such further relief as the Court deems just and proper.

DATED this 2nd day of May 2022

       STRONG & HANNI

       */s/ Kathleen J. Abke*
    By_____
       Kathleen J. Abke
       *Attorneys for Plaintiffs*